Filed 7/3/14  P. v. Boone CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>THOMPSON CLEVELAND BOONE,<br><br>Defendant and Appellant. | B247227<br><br>(Los Angeles County<br>Super. Ct. Nos. MA057453 &<br> MA051610) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kathleen Blanchard, Judge.  Affirmed.

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Ana R. Duarte, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Thompson Cleveland Boone appeals from the judgment entered following a jury trial in which he was found guilty of forcible rape in violation of Penal Code section 261, subdivision (a)(2),[1] two counts of forcible oral copulation (§ 288a, subd. (c)(2)(A)), robbery (§ 211), and kidnapping with the intent to commit rape or forcible oral copulation (§ 209, subd. (b)(1)).  The jury also found true, with respect to the conviction for forcible rape and both convictions for forcible oral copulation, the allegation that appellant kidnapped the victim and substantially increased the risk of harm to her (§ 667.61, subds. (a) & (d)(2)).  The trial court sentenced appellant to an indeterminate term of 75 years to life comprised of three consecutive terms of 25 years to life pursuant to section 667.61, subdivisions (a) and (d)(2).  A consecutive determinate sentence of five years was imposed for the robbery conviction.  The kidnapping count was stayed pursuant to section 654.  The trial court imposed various fines and court fees and awarded appellant 830 days of presentence custody credit.

Appellant raises three issues on appeal, all of which concern jury instructions.  We find no error in the challenged instructions and affirm the judgment.

## FACTS

**Prosecution Case**

On January 12, 2011, Helena T. traveled to the Antelope Valley to meet her former girlfriend, Candy.  Helena checked into room 247 of the Shadow Park Inn.  Candy arrived at approximately 4:00 p.m. or 5:00 p.m. and she and Helena made love, used drugs, and drank a little over half a bottle of wine.  Candy left at approximately 9:00 p.m. and Helena felt sad and very emotional.

Shortly after Candy left, Helena called a cab and went to a liquor store.  She bought two cans of "Tilt," an alcoholic beverage, and the cab driver agreed to store them for her in the trunk of the cab.  The cab driver drove her to a bar and agreed to return and

---

[1]     All statutory references shall be to the Penal Code unless otherwise noted.

2

pick her up later. At approximately 1:45 a.m. the driver returned and drove her to a Carl's Jr. restaurant. When the cab pulled up to the drive-thru window, appellant approached and asked Helena for money. She told appellant she had no money with her but that she had some change in her hotel. Helena did not recognize appellant at the time but later recollected that she had seen him outside the Shadow Park Inn when she checked in the previous day. When Helena got back to her hotel, appellant was waiting for her at the bottom of the stairs leading to her room.

Appellant followed Helena to her room. She did not consider appellant to be a threat and unlocked the door. Appellant followed her inside and closed the door. Helena began to eat a piece of chicken and looked in her backpack for change for appellant. Appellant asked if he could drink the leftover wine that was on the television set in the room, and she said yes. Appellant "guzzled it in one shot" and then sat at the end of the bed and pulled out a knife. Appellant told Helena to "come over" and "suck his dick." When Helena did not move, appellant hit her head with his closed fist and told her, "Bitch, you think I'm playing with you? I'm not fucking playing with you. Now get over here and suck my dick." Helena orally copulated appellant for approximately five minutes and appellant continued to hit her on the head.

Appellant got up and drank from one of the cans of Tilt. He then dragged Helena to the bathroom where he urinated. Helena pulled away from appellant's grasp and ran outside of the hotel room and yelled for help. Helena got approximately seven or eight feet outside the room when appellant grabbed her by the back of her shirt and flung her against the door. Helena's head hit the door and she lost consciousness.

Michelle Wise was staying in an adjacent room at the Shadow Park Inn. At approximately 3:00 a.m. on the morning of January 13, 2011, she heard the door to the adjacent room open and someone run out. She heard the voice of a woman yell for help. She then heard the door close and a loud "boom" that "shook the walls and the floor" of her room. She also heard a man's voice but could not understand what he said, and then it was quiet.

3

As Helena regained consciousness, she remembered being dragged back into the room by appellant. He positioned her on the bed, demanded she take her clothes off and again told her to "suck his dick." When appellant's penis became hard he attempted to insert it in Helena's vagina. When his penis became flaccid he struck Helena again and told her to orally copulate him. Appellant made two or three more attempts to have intercourse with Helena before she passed out. Helena awoke to hear appellant yell, "It's 11:37. Get up and suck my dick again." Helena heard the hotel maid knocking on a door down the hall. Helena orally copulated appellant. Appellant gave Helena a glass of water because she was choking. When appellant turned around, Helena got up and ran out of the room yelling for help and for the police to be called.

Wise was speaking to the maid when the door to the room adjacent to her opened up. She saw Helena, who was naked, run by and heard her yell, "He raped me. He raped me. He raped me all night long." It was the same voice Wise had heard at approximately 3:00 a.m. Helena saw appellant running down the hallway and carrying all of her belongings. At trial she testified, "He had all my goods and everything of mine." The clothing items taken by appellant included her jacket, hat, jogger pants, and her blue boxer underwear. Miriam Cervantes, the hotel maid, saw a naked woman followed by a naked man run out of the room.

Los Angeles County Sheriff's Deputy Melissa Sullivan responded to the location. She searched the hotel room and recovered a knife wedged between the bed's mattress and box spring. Helena was taken to the hospital where a nurse conducted a sexual assault exam on her. Helena suffered bruising on her head, neck, and face, and the physical findings were consistent with Helena's account of the incident.

On January 19, 2011, appellant was apprehended at the Carl's Jr. restaurant where he had approached Helena six days earlier. Appellant was wearing two pairs of boxers, a pair of jeans, and a pair of sweatpants. He also had in his possession, Helena's wallet which contained her identification, her Social Security card, her credit cards, her ring, a

4

cell phone, and two bags that belonged to her. DNA extracted from vaginal swabs taken from Helena matched DNA extracted from a swab taken from appellant's mouth.

**Defense Case**

No evidence was presented on behalf of appellant.

## DISCUSSION

### I.    Jury Instruction–CALJIC No. 2.15

As relevant here, the trial court instructed with CALJIC No. 2.15, as follows:  "If you find that a defendant was in conscious possession of recently stolen property, the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crime of Robbery.  Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt.  However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt."

Appellant contends the trial court erred in instructing the jury with CALJIC No. 2.15.  He asserts the instruction "permitted the jury to infer . . . not only that the items were stolen and that appellant knew the items were stolen, but additional elements included in the crime of robbery."  From this, he argues "the jury was not required to find that each element of the offense had been proven beyond a reasonable doubt."  But other instructions told the jury exactly that:  "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty.  This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt."  (CALJIC No. 2.90.)  The jury was also instructed that:  "The specific intent with which an act is done may be shown by the circumstances surrounding the commission of the act.  However, you may not find [appellant] guilty of [robbery] unless the proved circumstances are not only (1) consistent with the theory that the defendant had the required specific intent, but (2) cannot be reconciled with any other rational conclusion."

Appellant then suggests that the instruction allowed the jury to find defendant guilty of robbery if he was "found with recently stolen property" and "slight" or "other"

evidence connected him to the crime. We do not interpret the instruction in that way. The jury was elsewhere instructed in the elements of the offense with CALJIC No. 9.40. The gist of CALJIC No. 2.15 was that the jury could *not* infer all of the elements of the offense solely from appellant's possession of stolen property, but could infer those elements, if it chose, from possession plus other evidence supporting an inculpatory inference. Here there was ample evidence from which the jury could have rationally concluded that appellant unlawfully took Helena's property. He was seen outside her hotel room, he asked her for money at the drive-thru window of a nearby restaurant, he followed her into her hotel room, he was seen grabbing her property including her clothing and bags and running away from the hotel with it, and six days after the incident he was found at the same nearby fast food restaurant wearing some of her clothing and in possession of her wallet, ring, and cell phone. These circumstances amply supported an inference of robbery. We fail to see how the challenged instruction could have any adverse effect on the evaluation of this evidence.

## II.    Jury Instruction–CALJIC No. 2.06

Appellant contends the trial court erred in instructing the jury with CALJIC No. 2.06 because the evidence was insufficient to support the instruction.

As relevant here, the trial court instructed with CALJIC No. 2.06, as follows: "If you find that a defendant attempted to suppress evidence against himself in any manner, such as by destroying or concealing evidence, this attempt may be considered by you as a circumstance tending to show a consciousness of guilt. However, this conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide."

"'It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference. [Citation.] . . . In order for a jury to be instructed that it can infer a consciousness of guilt from suppression of adverse evidence by a defendant, there must be some evidence in the record which, if believed by the jury,

6

will sufficiently support the suggested inference.'" (*People v. Hart* (1999) 20 Cal.4th 546, 620, quoting *People v. Hannon* (1977) 19 Cal.3d 588, 597; *People v. Valdez* (2004) 32 Cal.4th 73, 137.) In order to justify the instruction, however, the prosecution need not "conclusively establish[]" that suppression of evidence occurred; there need only be "some evidence in the record" that would support the inference. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 102.)

Appellant argues that because he was wearing Helena's clothing when arrested it shows he took them "for the sole purpose of putting them to his own use" and not to dispose of them. The evidence showed that appellant was wearing two pairs of boxers, a pair of jeans, and a pair of sweatpants when arrested. Even assuming all of these clothing items belonged to Helena, it still leaves her jacket and hat unaccounted for from the list of items she testified appellant took from her. Therefore, there was "some evidence in the record" that appellant destroyed or concealed some of Helena's clothing. (*People v. Coffman and Marlow, supra,* 34 Cal.4th at p. 102.) Furthermore, by wearing Helena's clothing, one reasonable inference was that appellant took the property in order to thwart any forensic testing of them.

Appellant also contends the consciousness of guilt instruction regarding the suppression of evidence was impermissibly argumentative and lessened the prosecution's burden of proof. The California Supreme Court has repeatedly rejected this particular challenge to CALJIC No. 2.06, "observing that '[t]he cautionary nature of the instruction[] benefits the defense, admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory.' [Citations.]" (*People v. Holloway* (2004) 33 Cal.4th 96, 142, quoting *People v. Jackson* (1996) 13 Cal.4th 1164, 1224.)

## III.     Jury Instruction on Lesser Included Offense

### A.      *Contention*

Appellant contends that the trial court had a sua sponte obligation to instruct the jury on lesser included offenses that were allegedly supported by the evidence.

Specifically, he contends the jury should have been instructed with CALJIC No. 9.60[2] on the lesser included offense of false imprisonment by violence because the evidence on the element of asportation as to the kidnapping charges was "equivocal." He contends the determination of whether seven or eight feet "was 'substantial' movement within the meaning of the kidnapping statute, or whether appellant's conduct more appropriately constituted false imprisonment by force, was a question which should have been submitted to appellant's jury."

### B. Background

Appellant was charged with and convicted of forcible rape (count 1), two counts of forcible oral copulation (counts 2-3), robbery (count 4), and kidnapping with the intent to commit rape or forcible oral copulation (count 5). Appellant was also charged with kidnapping (count 6), and the jury was expressly told that the crime charged in count 6 was a lesser included offense to the crime charged in count 5 and therefore was charged in the alternative.

With respect to kidnapping with the intent to commit rape or forcible oral copulation, the jury was instructed that the following elements had to be proved: 1. A person was unlawfully moved by the use of physical force; 2. The movement of the person was caused with the specific intent to commit rape or forcible oral copulation, and the person causing the movement had that specific intent when the movement

---

[2]     CALJIC No. 9.60 in pertinent part provides that: "Every person who by violence or menace violates the liberty of another person by intentionally and unlawfully restraining, confining, or detaining that person and compelling that person to stay or go somewhere without [his] [her] consent is guilty of the crime of false imprisonment by violence or menace in violation of Penal Code § 236. . . . . In order to prove this crime, each of the following elements must be proved: 1. A person intentionally [and unlawfully] restrained, confined, or detained another person, compelling [him] [her] to stay or go somewhere; 2. The other person did not consent to the restraint, confinement, or detention; and 3. The restraint, confinement or detention was accomplished by violence or menace." (CALJIC No. 9.60.)

8

commenced; 3. The movement of the person was without that person's consent; 4. The movement of the person was for a substantial distance, that is, a distance more than slight, brief, or trivial; and 5. That movement substantially increased the risk of harm to the person moved, over and above that necessarily present in the crime of rape or forcible oral copulation itself.  (CALJIC NO. 9.52.1.)

With respect to kidnapping, the jury was instructed:  1. A person was unlawfully moved by the use of physical force, or by any other means of instilling fear; or 1. A person was unlawfully compelled by another person to move because of a reasonable apprehension of harm; 2. The movement of the other person was without her consent; and 3. The movement of the other person in distance was substantial in character.  (CALJIC No. 9.50.)

With respect to the section 667.61 special allegations, the jury was instructed that a movement "that is only for a slight or trivial distance is not substantial in character."  In determining whether a distance that is more than slight or trivial is substantial in character, the jury was instructed to "consider the totality of the circumstances attending the movement, including, but not limited to, the actual distance moved, whether the movement increased the risk of harm above that which existed prior to the movement, or decreased the likelihood of detection, or increased both the danger inherent in a victim's foreseeable attempt to escape and the attacker's enhanced opportunity to commit additional crimes."  (CALJIC No. 10.10.)

### C.    *Standard of Review and Relevant Law*

We review de novo whether the trial court erred in failing to instruct on a lesser included offense.  (*People v. Cook* (2006) 39 Cal.4th 566, 596.)

"In a criminal case, a trial court must instruct on the general principles of law relevant to the issues raised by the evidence.  [Citation.]"  (*People v. Earp* (1999) 20 Cal.4th 826, 885.)  "That obligation has been held to include giving instructions on lesser

9

included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) Alternatively stated, an instruction on a lesser included offense is not required when the evidence is insufficient to support a conviction of that offense. (*People v. Hawkins* (1995) 10 Cal.4th 920, 954.) "It is error . . . to instruct on a lesser included offense when a defendant, if guilty at all, could only be guilty of the greater offense, i.e., when the evidence, even construed most favorably to the defendant, would not support a finding of guilt of the lesser included offense but would support a finding of guilt of the offense charged. [Citation.]" (*People v. Stewart* (2000) 77 Cal.App.4th 785, 795–796.)

"Any error in instructions on a lesser included offense in a noncapital case is subject to the [*People v.*] *Watson* [(1956) 46 Cal.2d 818, 836 (*Watson*)] standard of review requiring reversal only if it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of such error. [Citation.]" (*People v. Stewart, supra,* 77 Cal.App.4th at p. 796.)

### D. Analysis

We reject appellant's argument that there was substantial evidence from which the jury could have found that he merely "used violence and force to compel [Helena] to remain confined inside the hotel room." To do so, a juror would have to ignore the compelling evidence that showed that after appellant committed the crime of forcible oral copulation Helena attempted to escape, managed to get seven or eight feet outside the hotel room, was dragged back inside, and appellant then committed the crimes of forcible rape and forcible oral copulation. (See *People v. Stewart, supra,* 77 Cal.App.4th at pp. 795-796 [error to instruct on a lesser included offense when the evidence supports a finding of guilt of the offense charged].)

10

Equally unavailing is appellant's argument that the asportation element of kidnapping was equivocal. The jury was instructed to and considered the "totality of the circumstances attending the movement." Given the evidence that established that Helena was dragged back inside the hotel room which did in fact increase the risk of harm to Helena, decreased the likelihood of detection of appellant, and enhanced appellant's opportunity to commit additional crimes, the jury could not have concluded (1) that Helena was not kidnapped with the intent to commit rape or forcible oral copulation and (2) that Helena was only falsely imprisoned. (See *People v. Shadden* (2001) 93 Cal.App.4th 164, 168-170 [dragging a video store owner nine feet into a rear storeroom was sufficient asportation to sustain a conviction of kidnapping for rape].) Instruction on the lesser included offense was not warranted.

In any case any error in failing to give the instruction was necessarily harmless. In a noncapital case, an error in failing to instruct on a lesser included offense requires reversal only if the error is prejudicial under the standard of *People v. Watson, supra,* 46 Cal.2d at page 836--that is, only if it is reasonably probable that defendant would have obtained a more favorable result if the error had not occurred. (*People v. Breverman, supra,* 19 Cal.4th at p. 178.) In other words, to find the error prejudicial, the entire record must show that if given the choice between the lesser and the greater offenses, it is reasonably probable the jury would have convicted of the lesser. (*Id.* at p. 178, fn. 25.) The evidence showed that after appellant committed the crime of forcible oral copulation, Helena attempted to escape from the hotel room. Appellant grabbed Helena when she was seven to eight feet out the door of her room and dragged her several feet back inside the room. The evidence showed that he then committed the crimes of forcible rape and forcible oral copulation. Appellant has failed to show that had the jury been given the

11

option, it would have convicted of the lesser rather than the charged offense.  (Cal. Const., art. VI, § 13.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

FERNS

We concur:

_____, P. J.

BOREN

_____, J.

CHAVEZ

---

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12